# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA BROWN, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC., an Illinois Corporation,<br><br>　　　　　　　　　　Defendant. | Case No.: 19cv537-MMA (JLB)<br><br>**ORDER GRANTING PLANTIFF'S MOTION TO REMAND**<br><br>[Doc. No. 11] |

Plaintiff Ella Brown ("Plaintiff") filed this putative class action against Defendant United Airlines, Inc. ("Defendant") in the Superior Court of California, County of San Diego. *See* Doc. No. 1, Ex. A (hereinafter "Compl."). On March 21, 2019, Defendant removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Doc. No. 1. On April 19, 2019, Plaintiff filed a motion to remand this action back to state court. *See* Doc. No. 11. Defendant filed an opposition, to which Plaintiff replied. *See* Doc. Nos. 14, 15. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 17. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to remand.

///

1

## BACKGROUND

Plaintiff, a California resident, has been employed as a non-exempt ramp agent by Defendant in California since September 2016. *See* Compl. ¶ 3. Plaintiff claims she is entitled to overtime pay and meal rest periods dating back to the start of her employment. *See id.* Plaintiff alleges that the Class Period for this action is any time during the four years prior to the filing of the Complaint (February 14, 2019) "and ending on a date as determined by the Court." *Id*. ¶ 20.

On February 14, 2019, Plaintiff filed this putative class action in San Diego Superior Court on behalf of herself and all other similarly situated California employees. *See* Compl. Plaintiff alleges six claims for relief: (1) unlawful business practices, in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.; (2) failure to pay minimum wages, in violation of Cal. Lab. Code §§ 1194, 1197, 1197.1; (3) failure to pay overtime compensation, in violation of Cal. Lab. Code §§ 201, 510, 1194, 1198; (4) failure to provide required meal periods, in violation of Cal. Lab. Code §§ 226.7, 512; (5) failure to provide required rest periods, in violation of Cal. Lab. Code §§ 226.7, 512; and (6) failure to provide accurate itemized statements, in violation of Cal. Lab. Code § 226. *See id*. Plaintiff defines the proposed class as "all individuals who are or previously were employed by Defendant in California and classified as non-exempt employees." *Id.* ¶ 20. Plaintiff excludes from the proposed class "all persons that are or were employed by Defendant in the position of Flight Attendant." *Id.*

Defendant removed the action to this Court on March 21, 2019. *See* Doc. No. 1. Plaintiff filed the instant motion to remand on April 19, 2019. *See* Doc. No. 11.

## LEGAL STANDARD

"As a general matter, defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.' 28 U.S.C. § 1441(a). The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). The "propriety of removal" in

this case arises under "CAFA[, which] gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014).

A notice of removal must contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). There is no presumption against removal jurisdiction in CAFA cases. *Dart*, 135 S. Ct. at 554 (noting "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant") (internal quotations omitted). The burden of establishing removal jurisdiction under CAFA lies with the proponent of federal jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 135 S. Ct. at 553. "Evidence establishing the amount is required" where, as here, the plaintiff challenges the defendant's amount in controversy assertion. *Id.* at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)). "Under the preponderance of the evidence standard, a defendant must establish 'that the potential damage could exceed the jurisdictional amount.'" *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1149 (S.D. Cal. 2018) (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)).

## DISCUSSION

There is no dispute that the proposed class includes more than 100 employees. Thus, the issues before the Court are: (1) whether the parties are minimally diverse; and (2) whether Defendant has shown, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

///

3

### 1. Plaintiff's Request for Judicial Notice

As an initial matter, in her reply brief, Plaintiff requests that the Court take judicial notice of a May 2019 opinion from the Eastern District of California, *Gonzalez v. Hub Int'l Midwest Ltd.*, NO. ED CV 19-557 PA (ASx) 2019 U.S. Dist. LEXIS 79672 (C.D. Cal. May 10, 2019). *See* Doc. No. 15-1 at 2. However, Plaintiff asks the Court to judicially notice the opinion not to establish the facts of the case, but rather as supplemental authority for the Court to consider. This request is misguided as "a request for judicial notice is not a proper vehicle for legal argument." *Garcia v. California Supreme Court*, No. CV 12-4504-DWM, 2014 U.S. Dist. LEXIS 7363, at *1 (N.D. Cal. Jan. 21, 2014); *see, e.g., Ghalehtak v. FNBN I, LLC*, No. 15-CV-05821-LB, 2016 U.S. Dist. LEXIS 61347, at *3 (N.D. Cal. May 6, 2016); *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014), *appeal dismissed* (Apr. 22, 2015). Accordingly, the Court **DENIES** Plaintiff's request for judicial notice.

### 2. Diversity of Citizenship

Plaintiff first argues that Defendant fails to prove that the parties are sufficiently diverse. *See* Doc. No. 11-1 at 3. Plaintiff further argues that neither Defendant's Notice of Removal ("NOR") nor the testimony of Defendant's Declarant, Dorota Karpierz, contain "a shred of evidence or sworn testimony" that would suffice to establish minimal diversity of the parties. *Id.* at 3.

Minimal diversity under CAFA requires that a "member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For purposes of diversity jurisdiction, a person's citizenship is determined by the person's state of domicile—not the state of residence. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1181-82 (9th Cir. 2004) (citing 28 U.S.C. § 1331(c)(1)). For diversity jurisdiction in federal cases, the burden of proof rests with the party seeking

4

removal. *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614, at *15 (C.D. Cal. Nov. 18, 2005).

Here, Plaintiff lives and works in California, and is thus a citizen of California. *See* Compl. ¶ 3. Contrary to Plaintiff's assertions, Defendant provided sworn testimony by Declarant Dorota Karpierz that "[Defendant] is a Delaware corporation and has its headquarters in Chicago, Illinois." Doc. No. 1-2 at 2. Declarant Karpierz has been employed by Defendant for over 20 years and has "personal knowledge" of Defendant's citizenship. *Id.* at 2. Declarant Karpierz's sworn testimony regarding Defendant's citizenship is sufficient to establish Defendant's citizenship by a preponderance of the evidence.

Accordingly, the Court finds that Defendant has met its burden to establish minimal diversity under CAFA's relaxed standard.

### 3. <u>Amount in Controversy Calculations</u>

Plaintiff next contends that Defendant fails to prove that the amount in controversy exceeds $5,000,000. *See* Doc. No. 11-1 at 3.

Plaintiff's Complaint is silent with respect to damages sought, aside from indicating that "the amount in controversy for the aggregate claim of [California Class] Members is under five million dollars ($5,000,000)." Compl. ¶ 20. Plaintiff argues that the Court should grant her Motion to Remand because "Defendant's NOR relies solely on assumptions not grounded in real evidence . . . ." Doc. No. 11-1 at 10. In opposition, Defendant submits the declaration of Dorota Karpierz, employed by Defendant as Case Manager, Labor and Employment. *See* Doc. No. 14-1 at 2. Declarant Karpierz includes, as Exhibit A, the Fleet Services Employees Agreement ("Agreement") that governs the relationship between Defendant and its non-exempt employees, including ramp agents. *See* Doc. No. 14-1, Ex. A. The Agreement includes company policies and pay scales for ramp agents and various other non-exempt employees. *See id.* Based on Declarant Karpierz's declaration, and the employee pay scales included in Exhibit A, Defendant

5

calculates that the amount in controversy to exceed $10,000,000. *See* Doc. No. 1 at 6.[1] In reply, Plaintiff argues that Defendant used a "randomly determined number of workweeks" and a 20% violation rate, without providing evidence as to why these assumptions were made. Doc. No. 15 at 1-2. As such, Plaintiff asserts that Defendant fails to prove, by a preponderance of the evidence, that the amount in controversy is greater than $5,000,000. *See id*.

### a. Meal and Rest Break Claims

The Court first considers the amount in controversy calculations concerning Plaintiff's meal and rest break claims—the two claims for which Defendant provides specific assumptions and calculations.

Plaintiff alleges that "from time to time, D[efendant] failed to provide all the legally required off-duty meal breaks to Plaintiff and the other C[alifornia labor sub-class members]." Compl. ¶ 88. The Complaint also states that "Plaintiff and other C[alifornia labor sub-class members] are *often* not fully relieved of duty . . . for their meal periods." *Id* (emphasis added). Plaintiff further alleges that she, and other class members, are "from time to time required to work in excess of four (4) hours without being provided ten (10) minute rest periods." *Id*. ¶ 92. Plaintiff characterizes the alleged rest break violations as occurring "periodically." *Id.*

Defendant focuses on Plaintiff's use of the words "often" and "periodically" to characterize the consistency of Defendant's alleged violations. *See* Doc. No. 1 at 6. Defendant makes the following assumptions regarding the amount in controversy calculations for Plaintiff's meal and rest break claims: "There are approximately 2,182 individuals working for United as ramp agents in California." *Id*. Defendant states that "the current lowest hourly rate for ramp agents is $14.38." *Id.* To account for employee attrition, Defendant assumes that the putative class only includes 50% of the 2,182 ramp

---

[1] Citations to this document refer to the pagination assigned by the CM/ECF system.

6

19cv537-MMA (JLB)

agents employed by Defendant in California.  *Id.* at 7.  Defendant also assumes that "each class member was paid at $14.38 per hour, and missed one meal and one rest break each week for the 4 years (or 208 weeks) at issue in this action[.]"  *Id.*  One missed meal and one missed rest break per week is, effectively, a 20% violation rate.  Defendant calculates the amount in controversy for Plaintiff's meal break claim to be $3,263,224.64 ($14.38 hourly wage x 208 weeks x 1091 employees).  Further, Defendant calculates the amount in controversy for Plaintiff's rest break claim to be $3,263,224.64 ($14.38 hourly wage x 208 weeks x 1091 employees).  Thus, Defendant calculates Plaintiff's fourth and fifth causes of action as placing $6,526,449.28 in controversy.  *See id.* at 7.  As Defendant notes that because "this calculation only values the fourth and fifth causes of action and only considers ramp agents," the "actual amount in controversy is significantly higher."  *Id.*

Plaintiff maintains that "Defendant's [calculation] is . . . supported by a randomly determined number of workweeks . . . fails to consider the length of shifts, [and] whether meal breaks were owed based on length of shifts."  Doc. No. 15 at 2.  Moreover, Plaintiff argues that Defendant's assumed violation rate is not backed by evidence.  *See* Doc. No. 11-1.  Plaintiff states, "Defendant offers zero factual evidence as to why it is reasonable to assume that class members missed an average of one meal break and one rest break every single alleged workweek."  *Id*. at 5.  Plaintiff also asserts that "Defendant has the data regarding actual violation rates" but has not included it in Defendant's amount in controversy calculation.  Doc. No. 15 at 5.  According to Plaintiff, because the Complaint alleges that violations only occurred "from time to time," assuming any violation rate without actual evidence is unjustifiable.  *Id.* at 3.

Here, the Court looks first to the allegations in the Complaint to establish the appropriate violation rate.  *See Ibarra*, 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint").  Defendant, then, "bears the burden to

7

show that its estimated amount in controversy relied on reasonable assumptions." *Id.* at 1199. Plaintiff alleges that the violations occurred from "time to time." Compl. ¶¶ 13, 15, 17, 88, 92, 97. Defendant argues that because Plaintiff only provided a "vague assertion" of violations "from time to time," Defendant's assumed violation rate of 20% is reasonable. *See* Doc. No. 14 at 9. However, the Ninth Circuit has made clear that assumptions for an amount in controversy calculation "cannot be pulled from thin air[.]" *Ibarra*, 775 F.3d at 1199. Indeed, assumptions regarding a proposed violation rate need to be "grounded in real evidence." *Id.*

Courts in this District have previously found that assuming a violation rate that is not grounded in real evidence is arbitrary. *See Baretich v. Everett Fin., Inc.*, No. 18-cv-1327-MMA-BGS, 2018 U.S. Dist. LEXIS 164609, at *19 (S.D. Cal. Sep. 25, 2018) (quoting *Ibarra*, 775 F.3d at 1199) ("Ms. Dworshak's declaration does not address defendant's alleged violation rates and thus 'offers no information by which the Court may conclude that Defendant's assumptions were not 'pulled from thin air'"); *Basile v. Aaron Bros. Inc.*, No. 17-cv-485-L (NLS), 2018 U.S. Dist. LEXIS 16940, at *2 (S.D. Cal. Jan 31, 2018) (finding that allegations similar to the allegations here are "insufficient to support the assumption of any particular rate violation."); *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-cv-2837-CAB-NLS, 2017 U.S. Dist. LEXIS 15936, at *4 (S.D. Cal. Feb. 2, 2017) (noting that "without evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture.").

Plaintiff also cites to authority from a case where, like here, the complaint alleged that violations occurred "from time to time." *See Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-cv-05884-SJO-E, 2018 U.S. Dist. LEXIS 161293 (C.D. Cal. Sep. 19, 2018). There, the court found that because the defendant "does not set forth any facts supporting its assumptions regarding the frequency of meal and rest period violations," the defendant "has failed to establish . . . the amount in controversy for these claims." *Id.* at *9.

8

Upon review of the pleadings and evidence submitted, Defendant offers no reason "grounded in real evidence" as to why a 20% violation rate is appropriate. *Ibarra*, 775 F.3d at 1199. Ms. Karpierz's declaration does not include any information relevant to the frequency of meal and rest break violations. While Ms. Karpierz's declaration does include useful data regarding the potential class size, and hourly wages, there is no evidence that would lead the Court to believe that Defendant's assumptions were not "pulled from thin air." *Id*. Similar to *Sanders*, "[b]ecause use of either a 25% or 50% violation rate would at a minimum be equally reasonable (or equally unreasonable), it is impossible for the Court to decide that [the defendant] has satisfied its burden." *Sanders*, 2017 U.S. Dist. LEXIS 15936 at *11.

The Court acknowledges Defendant's concern that it need not "comb through [its] records to identify and calculate the exact frequency of violations." Doc. No. 14 at 9 (citing *Oda v. Gucci America, Inc.*, No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *5 (C.D. Cal. Jan. 7, 2015)). Many courts have considered this "fundamental tension." *Morris v. Camden Dev., Inc.*, No. 18-cv-3089-GW(FFMx), 2018 U.S. Dist. LEXIS 146559, at *18 (C.D. Cal. Aug. 27, 2018). However, "the Court may not simply ignore the Ninth Circuit's directive that it should not rely [on] 'an assumption about the rate of [defendant's] alleged labor law violations that [is] not grounded in real evidence.'" *Id.* (quoting *Ibarra*, 775 F.3d at 1199).

Accordingly, the Court finds that Defendant has not satisfied its burden, by a preponderance of the evidence, as to the amount in controversy with respect to Plaintiff's meal and rest break claims. *See Ibarra*, 775 F.3d at 1199.

**b. Plaintiff's Overtime Claim**

Plaintiff further alleges that Defendant failed to pay overtime wages during the period in question. *See* Compl. ¶¶ 8-15. According to Plaintiff, Defendant "maintained a uniform wage practice of paying P[laintiff] . . . without regard to the correct amount of overtime worked . . . ." *Id*. at ¶ 76. Defendant argues that because Plaintiff alleges a uniform policy without including facts regarding the frequency of the violations, it can

9

assume a 100% violation rate. *See* Doc. No. 14 at 12 (citing *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 U.S. Dist. LEXIS 60078 (C.D. Cal. May 5, 2016)). Defendant asserts that even if it assumed a 20% violation rate, as it did for Plaintiff's meal and rest break claims, "the amount in controversy from Plaintiff's overtime claim is approximately $4,894,836.96."[2] Doc. No. 14 at 12.

Defendant's arguments are unavailing for two reasons. First, a uniform policy does not necessarily mean Defendant failed to pay each employee all overtime wages during the relevant period. As Plaintiff points out, "while a practice may be uniformly applied that does not presuppose that everyone was uniformly harmed." Doc. No. 15 at 3 (citing *Williams v. Superior Court*, 165 Cal. Rptr. 3d 340, 353 (Ct. App. 2013)). Indeed, Plaintiff alleges that she "and other members" of the putative class "did not receive *full compensation* for all overtime owed." Compl. ¶ 79 (emphasis added). Thus, Plaintiffs allegations support the inference that she and members of the putative class received some, but not all, of overtime owed. As such, application of a 100% violation rate is unwarranted and speculative.

Second, the weight of authority in this District does not support application of any violation rate that is not grounded in real evidence. For example, when considering allegations of a defendant's uniform policy, courts have found that assumptions made without substantiation are "arbitrary and little more than speculation and conjecture." *Sanders*, 2017 U.S. Dist. LEXIS 15936, at *4; *see also Cummings v. G6 Hosp., Ltd. Liab. Co.*, No. 19-CV-00122-GPC-LL, 2019 U.S. Dist. LEXIS 56719, at *10 (S.D. Cal. Apr. 2, 2019) (finding that "[d]efendants have not provided reliable evidentiary bases for [their] assumption" that a 100% violation rate is reasonable in light of the plaintiff's allegations of a uniform policy); *Vilitchai v. Ametek Programmable Power, Inc.,* No. 3:15cv1957-L(BLM), 2017 U.S. Dist. LEXIS 31623, at *9 (S.D. Cal. Mar. 6, 2017) ("Ametek

---

[2] Defendant reached this number by multiplying $21.57 (hourly wage) by 1091 (number of employees) by 208 (208 weeks or 20% violation rate).

assumes that each putative class member employed . . . worked one hour of unpaid overtime per week. It provides no support for this assumption. Because the assumption is 'pulled from thin air,' it is insufficient to support Ametek's amount in controversy calculation.") (quoting *Ibarra*, 775 F.3d at 1199).

Additionally, several other courts have understood the "grounded in real evidence" standard outlined in *Ibarra* to mean that, when a complaint is based on an alleged uniform policy, assumptions made by a defendant must be backed by foundational facts. *See Davis v. Barney's Inc.*, No. CV 18-6627-JFW(SKx), 2018 U.S. Dist. LEXIS 175506, at *8-9 (C.D. Cal. Oct. 11, 2018) ("There is no basis to conclude that [defendant's assumptions] are accurate. This sort of guesswork is particularly egregious because [d]efendant . . . has ready access to all the facts [and] records . . . necessary to support its . . . calculations."); *Amirian v. Umpqua Bank*, No. CV 17-7574 FMO (FFMx), 2018 U.S. Dist. LEXIS 129228, at *13 (C.D. July 31, 2018) ("Although defendant does not have the burden of proving its ultimate liability, it must provide evidence of the amount in controversy, which defendant has not done here."); *Armstrong v. Ruan Transp. Corp.*, NO. EDCV 16-1143-VAP (SPx), 2016 U.S. Dist. LEXIS 148460, at *9 (C.D. Cal. Oct. 25, 2016) (noting that because "defendant 'provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week,' the Court finds [defendant] has failed to sustain its evidentiary burden for purposes of removal") (quoting *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 U.S. Dist. LEXIS 132930, at *6 (E.D. Cal. Sept. 17, 2013)); *Nolan v. Kayo Oil Co.*, No. C 11-00707 MEJ, 2011 U.S. Dist. LEXIS 72256, at *4-5 (N.D. Cal. July 6, 2011) (rejecting the use of a violation rate where the plaintiff alleged "systematic practice" of failing to pay overtime because the defendant "failed to provide evidence beyond the average number of employees during the class period and the number of pay statements at issue").

Here, the Court finds that the weight of authority supports the notion that assumed violation rates must be "grounded in real evidence." *Ibarra*, 775 F.3d at 1199. Similar to

the analysis undertaken in discussion of claims four and five, without real evidence, the Court considers Defendant's assumptions to be "arbitrary and little more than speculation and conjecture." *Sanders*, 2017 U.S. Dist. LEXIS 15936, at *4.

Some courts have indicated that "a defendant may establish the amount in controversy by presenting admissible statistical evidence taken from a representative sample and extrapolat[e] to calculate the potential liability for the full class." *Salcido v. Evolution Fresh, Inc.*, No. 2:14-cv-09223-SVW-PLA, 2016 U.S. Dist. LEXIS 1375, at *11 (C.D. Cal. Jan. 6, 2016) (citing *LaCross*, 775 F.3d 1200, at 1202-1203); *see also Moreno v. Ignite Rest. Grp.*, No. C 13-05091 SI, 2014 U.S. Dist. LEXIS 37035, at *16 (N.D. Cal. Mar. 20, 2014) (remanding case because the defendant failed to provide any evidence to support its assumed violation rate, "such as evidence based on records or a random sampling"). Defendant, however, offers no such statistical evidence in support of its violation rate.

Accordingly, the Court finds that Defendant has failed to satisfy its burden, by a preponderance of the evidence, as to the amount in controversy for Plaintiff's overtime claim.

### c. Attorneys' Fees

Defendant argues that attorneys' fees should be considered a "factor that further increases the amount in controversy beyond $5 million." Doc. No. 14 at 13. However, because Defendant "did not meet [its] burden to establish the amount in controversy as to any of the claims" discussed in its opposition brief, any fee calculation is "unsupported." *Basile*, 2018 U.S. Dist. LEXIS 16940 at *4.

### d. Summary

In sum, the Court finds that Defendant has failed to carry its burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million. As a result, the Court lacks subject matter jurisdiction and remand is proper. *See Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions").

## Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's motion to remand, and **REMANDS** this action back to state court. The Clerk of Court is instructed to close the case.

**IT IS SO ORDERED.**

Dated: July 9, 2019

HON. MICHAEL M. ANELLO
United States District Judge